# In the United States Court of Federal Claims

## FOR PUBLICATION

No. 23-387C
(Filed: August 23, 2023*)

| | |
|---|---|
| **THE KACE COMPANY, LLC**, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| **UNITED STATES**, | ) |
| | ) |
| *Defendant,* | ) |
| | ) |
| and | ) |
| | ) |
| **CELLEBRITE, INC.**, | ) |
| | ) |
| *Defendant-Intervenor.* | ) |
| | ) |

*Kevin T. Barnett* (argued), PilieroMazza PLLC, Washington, D.C., for plaintiff, with whom on the briefs were *Isaias "Cy" Alba, IV, Katherine B. Burrows, Eric A. Valle,* and *Dozier L. Gardner, Jr.* PilieroMazza PLLC, Washington, D.C.

*Borislav Kushnir* (argued), Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant, with whom on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Patricia M. McCarthy*, Director, and *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C. *Paulina C. Valanty* and *Jessica Chen*, Attorneys, U.S. Secret Service, *Of Counsel*.

---

* This Opinion and Order was originally filed under seal on August 16, 2023, in accordance with the Protective Order entered in this case. The Court provided the parties an opportunity to review the decision for any proprietary, confidential, or other protected information and submit proposed redactions. On August 23, 2023, the parties jointly proposed several limited and justified redactions. Accordingly, the Court accepts the proposed redactions and reissues the Opinion, with redacted language replaced with the following: "[███████]."

*Aron C. Beezley*, Bradley Arant Boult Cummings LLP, Washington, D.C., for defendant-intervenor, with whom on the briefs were Patrick R. Quigley (argued), Bradley Arant Boult Cummings LLP, Washington, D.C.

## OPINION AND ORDER

***BONILLA, Judge***.

This case is governed by two maxims: "Late is Late" and "Rules are Rules." The integrity and fundamental fairness of government contracting require a level playing field established through clearly stated and uniformly enforced rules of engagement.  The facts presented in this pre-award bid protest, documented in the administrative record, do not justify overturning the agency's decision disqualifying plaintiff from further award consideration; nor do they merit remanding this matter for further evaluation.  Each avenue of relief advanced by plaintiff leads down the improper path of excusing plaintiff's failure to timely submit the company's revised proposal.  Throughout this tortured procurement, the government has taken multiple corrective actions in an effort to salvage the competitive range.  There is no basis in fact or in law for the Court to direct further corrective action.

Pending before the Court are Plaintiff's Motion for Judgment on the Administrative Record (ECF 30) and Defendant's and Defendant-Intervenor's Cross-Motions for Judgment on the Administrative Record (ECF 34 & 35).  For the reasons set forth below, plaintiff's dispositive motion is DENIED and defendant's and defendant-intervenor's dispositive cross-motions are GRANTED.

## BACKGROUND

### I.    The Solicitation

#### A.    Background

On July 6, 2021, the United States Secret Service (Secret Service or agency) issued a solicitation for instructional services and training in digital forensics and cyber investigations.  The Secret Service intends to award a five-year Indefinite-Delivery Indefinite-Quantity (IDIQ) contract.  The awardee is expected to "provide all personnel, equipment, supplies, facilities, transportation, tools, materials, supervision, and other non-personal services necessary to perform the Instructional Services as defined in th[e] [Performance Work Statement (PWS)] . . . ." AR 205.[1] The intended audience for these training programs include agency personnel as well as state and local law enforcement, prosecutors, and judges.

---

[1] "AR __" is a citation to a Bates numbered page in the sealed administrative record filed by the United States on March 31, 2023.  *See* ECF 25.

The solicitation explained the Secret Service would evaluate proposals in two phases, using a total of five evaluation factors.  In Phase I, offerors were to submit written proposals to address Factor 1 (Program Manager and Instructor Experience) and Factor 2 (Corporate Experience).  Offerors were also required to submit a 30-minute video to address Factor 3 (Management and Staffing Approach).  The agency was to evaluate Phase I proposals and include the highest rated offerors in the competitive range for further evaluation in Phase II.  Phase II involved the presentation of a two-hour curriculum demonstration to address Factor 4 (Curriculum Demonstration) and submission of price under Factor 5 (Price).

Relevant here, under Factor 2 (Corporate Experience), the solicitation explained each offeror was required to submit three to five examples of its own corporate experience as a prime contractor within the last five years in which the offeror performed work similar to the required effort.[2]  The solicitation required offerors to include the following information for each corporate experience submission:

- Project title
- Description of services or scope of work provided
- Major accomplishments
- Contract type
- Contract number
- Period of performance
- Total dollar value
- Major subcontractor Name and [Data Universal Numbering System (DUNS)] (please identify the scope of work they were responsible for)

AR 195.  The solicitation was silent on whether offerors were permitted to (or prohibited from) relying on the experience of predecessor or affiliate companies.  Instead, the solicitation explained the Secret Service would use each prime offeror's information to assess the agency's level of confidence the offeror would successfully perform the contract requirements.  The solicitation further advised the contract award would be based on best value.

### B.    Initial Award

KACE timely submitted its Phase I proposal on August 2, 2021.  For Factor 2 (Corporate Experience), KACE cited five corporate experience examples: [▓▓▓▓▓] for KACE's major subcontractor, National White-Collar Crime Center (NW3C), and [▓▓▓▓▓] purportedly representing KACE's own experience as a prime contractor.  *See* AR 626–28 (identifying "KACE" as prime contractor performing Experiences 3 through 5).  The Source Selection Evaluation Board (SSEB) convened to evaluate Phase I proposals on August 2, 2021.  For Factor 2 (Corporate Experience), the

---

[2] The agency's evaluation of Factors 1 and 3–5 is not at issue in this protest.

agency assigned KACE and Cellebrite, Inc. (Cellebrite) "High" confidence ratings. AR 945. Based upon these findings, the SSEB recommended inclusion of KACE and Cellebrite in the competitive range to proceed to Phase II.[3] The SSEB further recommended the agency engage in discussions with both offerors.[4]

On August 25, 2021, the Secret Service notified KACE it was selected for inclusion in the competitive range and invited the company to participate in Phase II. The agency then entered into discussions with KACE. In connection with Factor 2 (Corporate Experience), the agency requested that KACE "clarify the roles KACE LLC, NW3C, and each minor subcontractor will perform during contract execution." AR 984. KACE timely responded to the agency's discussion questions and, on September 10, 2021, submitted its Phase II proposal. The Secret Service engaged KACE in additional discussions regarding pricing. KACE submitted its Final Proposal Revision (FPR) on September 21, 2021, which included the same corporate experience citations included in KACE's original Phase I proposal. The Secret Service subsequently requested clarification regarding KACE's subcontracting plan and pricing. KACE timely provided the requested information.

The Source Selection Authority (SSA) issued the Source Selection Decision Document on November 2, 2021. For Factor 2 (Corporate Experience), the agency again assigned KACE and Cellebrite "High" confidence ratings, fully crediting the corporate experience examples included in KACE's proposal. AR 2387. KACE proposed a Total Evaluated Price (TEP) of $39.9 million while Cellebrite proposed a TEP of $50.1 million. The SSA determined KACE's proposal provided the best value to the government and selected KACE for award. On November 8, 2021, the Secret Service notified KACE and the parties signed Contract No. 70US0922D-70090001 the following day.

## C.   Cellebrite's Protests

On November 19, 2021, following a requested debriefing, Cellebrite protested the Secret Service's award decision to the United States Government Accountability Office (GAO). Cellebrite challenged, *inter alia*, the agency's evaluation of KACE's corporate experience, asserting KACE lacked relevant technical and corporate experience to meet the solicitation's requirements. More specifically, Cellebrite claimed "KACE is a newly formed company and has only been in business since October 2020." AR 3108. Citing its review of the Federal Procurement Data System (FPDS), Cellebrite alleged KACE had not been awarded any relevant contracts. Cellebrite then offered:

---

[3] In addition to KACE and Cellebrite, the Secret Service received proposals from two other offerors. After determining one of those proposals was non-responsive, the agency evaluated the remaining three proposals between August 2-6, 2021. The SSEB completed its Phase I evaluation report on August 10, 2021.

[4] The procurement information included in the balance of this section is generally limited to the agency's dealings with KACE in light of the scope of this pre-award bid protest.

> In short, KACE clearly does not have the requisite experience.
> If KACE relied on the experience of any other entity, such reliance
> would have been in contravention to the terms of the Solicitation,
> which clearly required the prime contractor to submit three examples
> of corporate experience.  The Agency's decision to assign KACE a
> rating of High Confidence under Factor 2 when KACE has almost
> no corporate experience at all is highly unreasonable.

AR 3109 (emphasis and internal citations omitted).

In response to Cellebrite's protest, the Secret Service elected to take corrective action and, on December 17, 2021, notified the offerors the agency intended to cancel the award to KACE and amend the solicitation.  The Secret Service advised offerors the agency would "add clarifying language to Factor 2, Corporate Experience, and Factor 3, Management and Staffing Approach, to indicate that '[t]he Government will take into account experience regarding predecessor companies and key personnel with recent and relevant experience.'" AR 3132.  The agency further explained offerors would be given the opportunity to amend Factor 2 (Corporate Experience) submissions.  Citing the agency's notice of corrective action, on December 21, 2021, GAO dismissed the protest as moot.

As represented in the agency's notice of corrective action, the Secret Service issued Amendment 0005 to the solicitation on December 29, 2021, and invited offerors within the original competitive range–i.e., KACE and Cellebrite–to amend their proposals to address Factor 2 (Corporate Experience).[5]  On January 25, 2022, Cellebrite requested to also amend the company's Factor 5 (Price) submission. The Secret Service denied the request on January 28, 2022, explaining that clarifications to Factors 2 and 3 would not materially impact the price of the contract.

Cellebrite filed a second GAO protest on January 31, 2022.  In denying this protest on April 28, 2022, GAO concluded the agency's decision to limit the scope of revisions as part of the voluntary corrective action was reasonable and did not reflect unfair bias in favor of KACE.  AR 3858–63.  Dissatisfied, Cellebrite filed a pre-award bid protest in this Court on May 6, 2022, largely repeating the arguments raised to GAO.  *See Cellebrite, Inc. v. United States*, No. 22-508 (Fed. Cl. filed May 6, 2022).  In response to Cellebrite's protest, the agency again opted to take corrective action.  Cellebrite voluntarily dismissed its protest on September 6, 2022.

---

[5] In addition to the amendments at issue (i.e., Amendments 0005 and 0006), discussed *infra*, the Secret Service issued four prior amendments to the solicitation: Amendment 0001 (July 16, 2021); Amendment 0002 (July 29, 2021); Amendment 0003 (Sept. 15, 2021); and Amendment 0004 (Oct. 12, 2021).

### D.    Amendment 0006

On November 20, 2022, the Secret Service issued Amendment 0006 to the solicitation and invited KACE and Cellebrite to revise their proposals.  The agency instructed offerors to "provide your submission to the government **no later than 5pm EST, January 3, 2023**." AR 3870 (emphasis in original).  Regarding Factor 2 (Corporate Experience), Amendment 0006 deleted the following passage from the original solicitation:

> The corporate experience information provided in support of the prime contractor shall pertain to the prime offeror's own experience, not the experience of any proposed subcontractors or teaming partners. Likewise, the corporate experience provided in support of the major subcontractor shall pertain to the major subcontractors [sic] own experience and not the experience of past subcontractors or teaming partners.

AR 195.  In its place, the Secret Service included:

> The corporate experience information provided shall include offeror, predecessor or affiliate companies, major subcontractors, and key personnel's recent and relevant experience, as applicable. The prime contractor's corporate experience shall pertain to the prime offeror's own experience or their key personnel's own experience in managing a contract of similar scope and magnitude.  Likewise, the corporate experience provided in support of the predecessor companies, affiliate companies, and major subcontractor's [sic] shall pertain to the predecessor companies, affiliate companies, and major subcontractors own experience and not the experience of past subcontractors, past affiliates or teaming partners.  (Amendment 6).

AR 3923.

Amendment 0006 also required offerors to provide the following additional information for their corporate experience examples: (1) the contact information for the government's Contracting Officer or Contracting Officer's Representative, including their name, email, and phone number (CO/COR contact information); and (2) major subcontractors' Unique Entity Identification (UEI).  Accordingly, the revised list of required information included the following:

- Project title
- Description of services or scope of work provided
- Major accomplishments
- Contract type
- Contract number

- *Government COR or CO: Name, email and phone number (added per Amendment 6)*
- Period of performance
- Total dollar value
- Major subcontractor Name and *UEI* (please identify the scope of work they were responsible for) *(revised per Amendment 6)*

*Id.* (emphasis added); *compare id. with* AR 195 (original solicitation quoted *supra* at 2).  Under the heading "Proposal Preparation," the solicitation explained:

> All proposals must clearly and convincingly demonstrate that the offeror has a thorough understanding of the requirements and associated risks, and is able, willing, and competent to devote the resources necessary to meet or exceed the requirements.  *Failure of an offeror to address any items listed in FAR 52.212-1 and this addendum may make the offer unacceptable and may result in it not being considered for award*.

AR 3918 (emphasis added).

## II.   KACE's Late Submission

On December 28, 2022, KACE timely submitted the updated financial responsibility information required by Amendment 0006.  Then, on January 3, 2023, KACE submitted its second FPR via email in two parts.  Both emails were received by the Secret Service minutes *after* the 5:00 p.m. (EST) deadline; specifically, 5:02:07 p.m. (EST) and 5:06:41 p.m. (EST), respectively.  AR 4682.  Consequently, on January 5, 2023, the Secret Service informed KACE: "the government is unable to accept your revised proposal . . . ." *Id.*

Prior to rejecting KACE's January 3, 2023 FPR ("second FPR"), the agency considered whether the late email submissions satisfied the "electronic commerce" exception under FAR 52.212-1(f)(2)(i)(A).  Put simply, the government may accept an otherwise late proposal when an offeror timely submits a proposal electronically, but the government's information technology (IT) infrastructure (server) prevents timely delivery to the intended recipient.  *See eSimplicity, Inc. v. United States*, 162 Fed. Cl. 372, 381 (2022) (discussing "electronic commerce" exception).  To qualify, three elements must be satisfied: (1) the proposal is received before an award is made; (2) the proposal does not unduly delay the acquisition; and (3) the proposal was received at the initial point of entry to the government IT infrastructure not later than 5:00 p.m. *one working day prior to the date specified for receipt of offers.  Id.* (emphasis added).  Regardless of the precise timing of KACE's January 3, 2023 emails, by definition, they could not have entered the

7

government server a day earlier on January 2, 2023.[6]  For this reason, the Secret Service determined the "electronic commerce" exception was inapplicable and did not accept KACE's January 3, 2023 proposal or consider it for award.

On January 11, 2023, KACE wrote the Secret Service stating:

> We acknowledge and accept responsibility for the late arrival of KACE's electronic submission as documented in your letter and humbly request the government offer leniency regarding the common cut-off date for [the] solicitation, Amendment 6, and allow the KACE proposal to be accepted and remain under consideration for award.

AR 4684.  KACE explained it encountered technical difficulties in submitting its proposal, resulting in the late submission, requesting: "Based on our past record of success and engagement, we respectfully ask for a bit of forbearance and understanding regarding the technical difficulties faced during final proposal submission which resulted in a de minimis delay in receipt at the prescribed location."  AR 4686.  The next day, the agency denied KACE's request, explaining the FAR did not permit acceptance of KACE's untimely proposal.

On January 13, 2023, KACE alternatively requested that the Secret Service assess the company's prior (timely) submissions against the amended solicitation. On January 23, 2023, KACE clarified it was asking the agency to evaluate the company's September 21, 2021 FPR ("original FPR") as if timely submitted in response to the current (November 2022) amended solicitation.[7]  After reviewing KACE's original FPR, on February 2, 2023, the Secret Service notified KACE: "[The company's] proposal is non-compliant and thus ineligible for award." AR 4710.  The agency explained KACE's original FPR did not include information required by Amendment 0006 (i.e., CO/COR contact information), and further referenced ambiguity in KACE's corporate experience.  The agency concluded that the missing information "hinder[ed] the Government's ability to evaluate Factor 2, Corporate Experience, making it ineligible for consideration and award."  *Id.*

---

[6] Curiously, the record includes conflicting January 3, 2023 email submissions from KACE to the Secret Service.  *See* AR 4089, 4671–72 (emails sent both prior to and after the 5:00 p.m. proposal submission deadline).  But KACE never disputed the untimeliness of its January 3, 2023 FPR submission and does not do so here.  *See* ECF 30 at 13 ("KACE submitted its second FPR on January 3, 2023, at 5:02:07pm EST . . . .").  The Court concludes KACE waived any claim it timely submitted its second FPR; and, as noted above, the timing of its submission on January 3, 2023, is immaterial to the "electronic commerce" exception.

[7] On January 19, 2023, the Secret Service asked KACE to clarify which versions of the company's previously (and timely) submitted FPR sections the agency should evaluate in response to the revised solicitation.

Thereafter, on March, 8, 2023, the Secret Service provided KACE a written pre-award debrief, making clear KACE's original FPR offered "ambiguous corporate experience examples" such that the agency was "unable to determine whether it was KACE, a predecessor, an affiliate, or a completely unrelated company whose experience was being listed." AR 4713. The Secret Service explained: "All the KACE Corporate Experience examples as the prime contractor predated KACE's incorporation and the submission failed to explain whose experience was being presented or how it could relate to KACE's ability to perform in a similar contract." *Id.* The agency determined KACE's ambiguous corporate experience examples, coupled with the missing CO/COR contact information, "made it impossible for the government to evaluate Factor 2." AR 4713–14.

On March 21, 2023, KACE filed this action challenging the Secret Service's disqualification of KACE's untimely January 3, 2023 FPR as well as the agency's determination that KACE's original FPR was non-compliant and ineligible for award. The Court heard oral argument on the parties' dispositive cross-motions on August 1, 2023.

## DISCUSSION

### I.   Standard of Review

RCFC 52.1(c) provides: "a party may move for partial or other judgment on the administrative record." *Id.* The Court of Federal Claims reviews a federal agency's procurement decisions pursuant to the Administrative Procedure Act (APA) standard and must determine whether the agency's actions were arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard is highly deferential and requires the Court to sustain an agency action evincing rational reasoning and consideration of relevant factors. *See Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2010); *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed. Cir. 2008).

### II.   "Otherwise Successful Offer" Exception

KACE concedes the company's January 3, 2023 FPR was submitted after the deadline specified in the solicitation, albeit by minutes. The Secret Service rejected the proposal as untimely. KACE nevertheless asserts the agency's decision not to consider KACE's second FPR was arbitrary, capricious, contrary to law, and an abuse of discretion. In support, KACE argues the agency failed to at least *consider* whether the "otherwise successful offer" exception to the "late is late" rule–codified in 48 C.F.R. § 52.212-1(f)(1)–authorized the agency to accept the late proposal. The Court disagrees.

The FAR provides in part: "Offerors are responsible for submitting offers . . . [at] the Government office designated in the solicitation by the time specified in the

solicitation."  48 C.F.R. § 52.212-1(f)(1).  It necessarily follows that an offer received by the government "after the exact time specified for receipt of offers is 'late' and will not be considered . . . ."  *Id.* at § 52.212-1(f)(2)(i).  Indeed, proposal deadlines are "strictly enforced across the board."  *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1381 (Fed. Cir. 2009) (late proposal "is tantamount to no proposal at all").  Nonetheless, the FAR provides certain limited exceptions to the "late is late" rule.  Relevant here, "a late modification of an otherwise successful offer, that makes its terms more favorable to the Government, will be considered at any time it is received and may be accepted."  48 C.F.R. § 52.212-1(f)(2)(ii).  Contrary to KACE's contention, this allowance—known as the "otherwise successful offer" exception—is inapplicable to this case.

The crux of KACE's challenge to the rejection of its second FPR is the agency's alleged failure to *sua sponte* consider the "otherwise successful offer" exception.[8]  During oral argument, KACE asserted the Secret Service was obligated to consider *every* exception to the "late is late" rule, even if not requested, because it would not be unduly burdensome for the agency to consider potentially relevant exceptions.[9]  To this end, KACE proffered: it is in the government's best interest to keep the competitive range intact particularly where, as here, KACE's disqualification leaves Cellebrite as the last company standing.  KACE does not cite any authority–and the Court has found none–adopting a burden-shifting framework requiring the government to consider every exception.  Nor does it make sense to require the government to find possible workarounds and avenues of circumvention to benefit the offeror who failed to follow the rules specified in the solicitation to the potential detriment of compliant offerors.  To find otherwise would raise questions of potential bias.  As noted by defendant-intervenor during oral argument, had the

---

[8] The Court considered whether KACE's requests for "leniency" and "forbearance and understanding" in its January 11, 2023 letter to the Secret Service, AR 4684–86, constitute a request for consideration under the "otherwise successful offer" or any other exception to the "late is late" rule.  Review of this language in context, however, reveals KACE was instead seeking to extend the submission deadline.  *See id.* at 4686 ("As mentioned above, we suggest a simple amendment to extend the common cut-off date for receipt of final proposal documents to maintain fairness to all offerors remaining in the competitive range.").  Because the "otherwise successful offer" exception is inapplicable, the Court's consideration of this issue was largely academic.

[9] As noted *supra*, prior to rejecting KACE's January 3, 2023 FPR, the Secret Service considered the "electronic commerce" exception.  The record does not indicate the agency's reason for considering the exception, but the Court presumes it was because KACE submitted its proposal electronically and the agency wanted to rule out the possibility the government server caused the proposal to be late.  *Compare* AR 4682 ("For quotations/proposals received electronically, FAR 52.212-1(f)(2)(i)(A) permits the government to accept late proposals only if they meet the following criteria . . . .") *and* AR 4690 (similar) *with* Tr. at 87 (Aug. 1, 2023) (ECF 46) ("And to address one of the questions . . . about why the agency looked at the electronic commerce exception to the 'late is late' rule, I don't think it's indicated anywhere, but the obvious answer to that to me is because they submitted it by email.").  Regardless, at this point, KACE was on notice the agency considered this exception.  It was then incumbent upon KACE to request consideration of other potential exceptions, including the "otherwise successful offer" exception.  Instead, KACE assumed responsibility for its untimely submission.

Secret Service accepted KACE's late proposal, Cellebrite likely would have filed its fourth protest in this matter.

In any event, the Court concludes the "otherwise successful offer" exception to the "late is late" rule does not apply in this case as a matter of law. As discussed *supra*, to satisfy the exception, KACE must show: (1) it had an otherwise successful offer at the time it submitted its second FPR; and (2) the terms of its second FPR were more favorable to the government. *See* 48 C.F.R. § 52.212-1(f)(2)(ii). Even then, while the proposal must be considered, the agency retains discretion whether to accept it. *See id.* (using "will" in addressing agency consideration and "may" to address agency acceptance). There is a dearth of binding Federal Circuit precedent and persuasive caselaw from this Court addressing the "otherwise successful offer" exception. However, GAO recently explained: an otherwise successful offer is one that would result in the award of the contract to the offeror regardless of the late modification. *See CharDonnay Dialysis, LLC*, B-420910; B-420910.2, 2022 CPD ¶ 273 at *3–4 (Oct. 27, 2022). That is, the offeror "must already be in line for award prior to the time the late proposal modification is submitted." *Id.* Stated differently, an offeror cannot avail itself of the exception where the agency has not already identified an otherwise successful offeror. *See, e.g., id.* (no successful offer identified because agency had not yet evaluated revised proposals); *LATG, Inc.*, B-409679.2, 2014 CPD ¶ 226 at *3 (July 31, 2014) (otherwise successful offeror does not exist pre-award).

KACE argues it satisfies the first prong because the Secret Service initially awarded KACE the contract in November 2021 based on KACE's original FPR. KACE's argument fails to consider the agency's decision to take corrective action in response to Cellebrite's post-award bid protest, cancel the award to KACE, and amend the solicitation's requirements.[10] The agency issued Amendment 0005 to the solicitation in December 2021 and invited KACE and Cellebrite to revise their proposals. The agency subsequently issued Amendment 0006 which further modified the solicitation and, specifically, Factor 2 (Corporate Experience). The record clearly shows the Secret Service had not determined whether an offer was in line for award under the final solicitation (under Amendment 0006) at the

---

[10] During oral argument, the government informed the Court that although the Secret Service cancelled the award decision to KACE, the agency did not administratively void the contract signed by the parties. *See* Tr. at 40. KACE then cited this administrative disconnect in support of its argument that KACE's original FPR was an "otherwise successful offer." *Id.* at 109. However, as pointed out by the government, the record clearly shows the parties operated under the assumption that the contract was void and treated the agency's award cancellation as the operative decision regarding KACE's award (e.g., KACE did not perform any work under the contract, KACE filed a pre-award bid protest rather than a breach of contract or termination for default or convenience claim). At bottom, the agency's failure to perform the ministerial task of formally voiding the contract after cancelling the award decision does not support a finding that KACE's original FPR was an "otherwise successful offer" under the amended solicitation.

time offerors submitted their second FPR.[11]  In fact, the agency contradictorily determined KACE's original FPR was "non-compliant and thus ineligible for award" under the revised solicitation.  AR 4710.  For these reasons, the Court concludes KACE's original FPR does not qualify as an "otherwise successful offer" under 48 C.F.R. § 52.212-1(f)(2)(ii).[12]

On the record presented, KACE also cannot conclusively satisfy the second requirement of the "otherwise successful offer" exception (i.e., the terms of KACE's second FPR were more favorable to the government than KACE's original FPR).  KACE asserts its second FPR offered additional instructors and staff.  As pointed out by the government, however, the additional manpower and "greater flexibility and capacity," *see* ECF 30 at 36–37, came with an increased [⬛⬛⬛⬛] price tag.  *Compare* AR 2396 ($39.9 million price proposal) *with* AR 4681 ([⬛⬛⬛⬛⬛]).  The Secret Service retains discretion to determine, in the first instance, whether the additional instructors and staff proposed in KACE's second FPR are more favorable than the terms of KACE's original FPR accounting for the increased cost.  Given the Court's conclusion that the Secret Service was not required to consider the "otherwise successful offer" exception, remand to the agency to make this assessment is not required.

## III.    Rejection of Original FPR

KACE argues the Secret Service acted arbitrarily and abused its discretion in rejecting the company's original FPR as non-compliant with the solicitation (as revised by Amendment 0006).  Specifically, KACE maintains Amendment 0006 permitted–but did not require–offerors to submit revised proposals.  KACE further claims the agency's favorable evaluations of KACE's corporate experience under prior versions of the solicitation belie the agency's rationale for rejecting KACE's proposal.  The Court disagrees.

As detailed above, following the November 2021 contract award to KACE and Cellebrite' first protest, the Secret Service took corrective action and issued Amendment 0005.  Amendment 0005 "add[ed] clarifying language to Factor 2, Corporate Experience, and Factor 3, Management and Staffing Approach, to indicate that '[t]he Government will take into account experience regarding predecessor companies and key personnel with recent and relevant experience.'" AR 3132.  The agency subsequently issued Amendment 0006, which required additional information regarding Factor 2 (Corporate Experience), including

---

[11] As of August 1, 2023, the agency had not completed its evaluation of Cellebrite's proposal (i.e., the remaining proposal) let alone made an award decision.

[12] During oral argument, the Court spent considerable time discussing potential scenarios evoking the "otherwise successful offer" exception.  *See* Tr. at 28, 50–51.  Suffice it to say the analysis of this exception to the "late is late" rule would be markedly different had the Secret Service not cancelled the November 2021 award decision to KACE.

CO/COR contact information.  Importantly, Amendment 0006 also advised offerors: "The corporate experience information provided shall include offeror, predecessor or affiliate companies . . . ."  AR 3923.  In providing this information, offerors were required to differentiate between their own corporate experience as a prime contractor and the corporate experience of any predecessor or affiliate companies:

> The prime contractor's corporate experience shall pertain to the prime offeror's own experience or their key personnel's own experience in managing a contract of similar scope and magnitude.  Likewise, the corporate experience provided in support of the predecessor companies, affiliate companies, and major subcontractor's [sic] shall pertain to the predecessor companies, affiliate companies, and major subcontractors [sic] own experience and not the experience of past subcontractors, past affiliates or teaming partners (Amendment 6).

*Id.*

Citing the information required by Amendment 0006, the Secret Service rejected KACE's original FPR, in part, because KACE's original FPR offered "ambiguous corporate experience examples" such that the agency was "unable to determine whether it was KACE, a predecessor, an affiliate, or a completely unrelated company whose experience was being listed."[13]  AR 4713.  On this point, the record is clear: KACE's original FPR did not distinguish between KACE's corporate experience as the prime contractor and that of its predecessor or affiliate companies (i.e., MVM, Inc.).  Indeed, KACE's original FPR listed "KACE" as the entity which performed [ ████ ] of the five cited corporate experiences even though KACE did not exist when those contracts were performed.  *Compare* AR 626–28 (KACE original corporate experience dated September 2021) *with* AR 4121 (KACE amended corporate experience dated January 2023).  The fact that KACE relied almost exclusively (if not entirely) on the corporate experience of its predecessor but failed to disclose that information in its original FPR is, in part, what prompted Cellebrite's first protest and the Secret Service's ensuing decision to take corrective action.  As part of the voluntary corrective action, the agency issued Amendments 0005 and 0006 to explicitly permit consideration of predecessor and affiliate corporate experience.  Presumably, the corrective action was taken to keep KACE in the competitive range.  In doing so, the Secret Service reasonably sought clarity on the nature and extent of KACE's reliance on the corporate experience of its predecessor and affiliate companies as opposed to its own.

Notwithstanding the procurement's history (as borne out by the record), KACE counterfactually asserts: "KACE did not revise its Factor 2 submission in response to Amendments 0005 or 0006, as the Solicitation permitted."  ECF 30 at

---

[13] KACE's original FPR was submitted in September 2021 and, thus, predated the additional information required by Amendment 0006 issued in November 2022.

20.  Perhaps that is the fictional world in which the Secret Service could have assessed KACE's original FPR against the amended solicitation; but the reality is KACE attempted to provide the detail required in Amendment 0006 and submitted the critical information late.  Moreover, while it is true KACE was not *required* to revise its proposal in response to Amendment 0006, the company's failure (or decision not) to do so bore (realized) risks of noncompliance and rejection. "It is well-established that, in negotiated procurements . . . an agency's decision to exclude an incomplete or non-conforming proposal from consideration is 'entitled to a high degree of deference.'"  *Strategic Bus. Sols. v. United States*, 129 Fed. Cl. 621, 628 (2016) (upholding agency's decision to exclude noncompliant proposal where offeror failed to properly redact copies of technical and past performance volumes in accordance with solicitation's instructions).

Further, KACE's original FPR did not include the CO/COR contact information required by Amendment 0006.  Disputing the materiality of this information, KACE claims the agency "fully evaluated KACE's corporate experience without Government CO or COR contact information and determined that it had 'High Confidence' in KACE's ability to perform given the same."  ECF 30 at 22. But this argument ignores a critical fact: when the Secret Service awarded KACE a "High" confidence rating for corporate experience, the agency was under the mistaken impression–based upon KACE's representations–that KACE was the prime contractor on [ ▮▮▮▮ ] of the five corporate experience citations included in the original FPR.  When alerted to this inaccurate or incomplete representation,[14] rather than simply disqualify KACE, the Secret Service took steps to make an informed assessment.  KACE's late proposal deprived the agency of this opportunity.

Amendment 0006 required CO/COR contact information so the Secret Service could properly evaluate KACE's corporate experience.  As credibly argued by the government and Cellebrite, had the Secret Service been provided this information and contacted the COs or CORs, the agency would have learned that MVM–and not KACE–served as the prime contractor in the cited past performance examples. KACE's original FPR did not include this information and the company's late second FPR denied the government the use of this tool.  On this same point, the revised solicitation expressly provided: "Failure of an offeror to address any items listed in FAR 52.212-1 and this addendum may make the offer unacceptable and

---

[14] During oral argument, KACE maintained the Secret Service was aware KACE was relying on its predecessor company's experience during the agency's initial evaluation in September 2021, citing to the Contracting Officer's March 3, 2022 declaration (CO declaration).  *See* Tr. at 16–21 (citing AR 3356–66).  The Court notes the CO declaration was prepared in response to Cellebrite's second GAO protest challenging Amendment 0005 and, therefore, places limited weight on the CO's after-the-fact statements made in the course of litigation.  The record shows KACE's original FPR did not include the date of or information about KACE's incorporation or a discussion of any predecessors or affiliates.  Although it is not entirely clear when the Secret Service first became aware of the date of KACE's formation, the record points to Cellebrite's first GAO protest.

may result in it not being considered for award."[15]  AR 3918.  Accordingly, there is no basis to disturb the agency's disqualification of KACE's original proposal for failing to comply with the solicitation's amended requirements.

## IV.    Discussions

"FAR 15.306(d) governs the conduct of negotiations, also called discussions, in the context of the competitive acquisition process at issue here."  *Precision Asset Mgmt. Corp. v. United States*, 135 Fed. Cl. 342, 351 (2017) (citing 48 C.F.R. § 15.306).  "[A]t a minimum, the contracting officer must . . . indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond."  *Id.* at 355 (citing 48 C.F.R. § 15.306(d)(3)).  "To conduct meaningful discussions, the agency must 'point out weaknesses or deficiencies in a proposal . . . so that the agency leads the offeror into areas of its proposal which require amplification or correction.'"  *Poplar Point RBBR, LLC v. United States*, 147 Fed. Cl. 201, 224–25 (2020) (citations omitted).  "The scope and extent of discussions are a matter of contracting officer judgment."  *Id.* at 225 (citing 48 C.F.R. § 15.306(d)).

KACE claims the Secret Service failed to engage in meaningful discussions (in September 2021) regarding the now-disqualifying ambiguity in KACE's corporate experience examples.[16]  In doing so, KACE again ignores the history and context of the procurement, particularly the timing of Amendments 0005 and 0006, which substantively revised Factor 2 (Corporate Experience).  Put simply, when the Secret Service first evaluated KACE's original FPR against the original solicitation–which prompted the now-contested September 2021 discussions–KACE unambiguously presented MVM's prior contract performance as its own.  Because the Secret Service had no reason to question these representations, there was no ambiguity, much less any weakness or deficiency, to discuss.  As such, there is no basis in law or in fact to deem the September 2021 discussions meaningless.

## V.    Clarifications

KACE next asserts the Secret Service's failure to request clarifications regarding the missing CO/COR contact information, opting instead to eliminate

---

[15] The Court addresses KACE's argument that this provision constitutes an unstated evaluation criterion in Section VI, *infra*.

[16] The Court alternatively considered whether the Secret Service should have conducted discussions with KACE in early 2023, during the agency's (re)evaluation of KACE's original FPR against Amendment 0006.  However, as defendant noted during oral argument, discussions are only available to offerors within the competitive range and KACE fell outside of the competitive range after its proposal was deemed noncompliant.  *See* Tr. at 78; FAR 15.306(d); *Birch & Davis Intern, Inc. v. Christopher*, 4 F.3d 970, 971 (Fed. Cir. 1993) (noting contracting officer need not conduct discussions with offerors outside the competitive range).

KACE's original FPR from further consideration under Amendment 0006, was improper.  KACE argues the omission of CO/COR contact information was an obvious and minor clerical mistake and did not relate to a material term of the solicitation, requiring clarifications.  Citing the history of this procurement, defendant counters that the omission was not a mistake because the solicitation did not require the information when KACE prepared its original FPR.  Defendant further highlights the materiality of the missing information (i.e., a tool to discover information regarding the nature and scope of KACE's actual past performance as a prime contractor on similar projects).  On this issue, the Court was initially poised to rule in KACE's favor but emerged from oral argument agnostic.

"Under FAR 15.306(a)(1)-(2), clarifications are 'limited exchanges' in which the Government is permitted–but not required–to allow offerors to 'clarify certain aspects of proposals . . . or to resolve minor clerical errors.'"  *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1346 (Fed. Cir. 2021).  In other words, errors may be fixed with clarifications under FAR 15.306(a) where they are obvious, clerical mistakes.  Clarifications are not intended to cure deficiencies or material omissions, materially alter the technical or cost elements of the proposal, or otherwise revise the proposal.  *See Dell Fed. Sys., LP v. United States*, 906 F.3d 982, 998 (Fed. Cir. 2018); *see e.g., Safeguard Base Operations*, 989 F.3d at 1346 (deficiencies and material omissions cannot be cured through clarifications); *ManTech Advanced Fed. Sys. Int'l, Inc. v. United States*, 141 Fed. Cl. 493, 507 (2019) (inclusion of additional labor category chargeable to contract that violated solicitation could not be corrected through clarifications).

The timing and reason underlying KACE's omission of CO/COR contact information shows the omission was neither a clerical error nor a mistake.  The absence of the required information resulted from KACE's untimely January 3, 2023 submission, which included the required information.  As explained *supra*, when KACE submitted its original FPR in September 2021, the solicitation did not require offerors to supply CO/COR contact information in connection with Factor 2 (Corporate Experience).  CO/COR contact information was not requested until the Secret Service issued Amendment 0006 in November 2022 and invited KACE and Cellebrite to submit revised proposals.

Caselaw in this area is inapplicable or otherwise unpersuasive.  In *Griffy's Landscape Maint., LLC v. United States*, where the offeror failed to provide insurance point of contact information, this Court held "the absence of the point of contact information in and of itself clearly indicates a clerical mistake."  46 Fed. Cl. 257, 259 (2000).  In reaching this conclusion, the *Griffy's* court found the omission of the information "inadvertent" and that the agency-offeror's contract history (i.e., evidencing existing insurance coverage) should have alerted the agency that the omission was a clerical mistake or oversight.  *Id.* at 259–60.  Here, KACE's omission was not inadvertent and there is no evidence of any contracting history between the Secret Service and KACE.

Similarly, *BCPeabody Constr. Servs., Inc. v. United States*, does not support KACE's position.  112 Fed. Cl. 502 (2013).  In *BCPeabody*, the offeror submitted two project information sheets to demonstrate experience for its major subcontractor, but mistakenly sent two copies of the same page.  *Id.* at 505.  The contracting officer knew (or should have known) this was a photocopying or assembling error because another offeror identified the same subcontractor and submitted the requisite relevant experience.  *Id.* at 506.  The *BCPeabody* court determined the clerical error should have been addressed through clarifications, explaining: "the clerical error led the contracting officer to evaluate the past performance of [the same] subcontractor differently for two offerors."  *Id.* at 512 (contracting officer abused discretion in not seeking clarification and in treating offerors disparately).  Here, there are no issues involving unequal treatment of offerors regarding the same corporate experience examples.  The Court declines to extend these holdings to the facts of this case.

Finally, KACE alleges its omission triggers the "too close at hand" doctrine, arguing the Secret Service could have obtained the necessary contact information through internal sources, contacting the contracting agencies listed in the cited corporate experience examples, or by simply asking KACE.[17]  "It is well-established that 'some information is simply too close at hand to require offerors to shoulder the inequities that spring from an agency's failure to obtain, and consider, the information.'"  *Insight Pub. Sector, Inc. v. United States*, 157 Fed. Cl. 398, 410 (2021) (quoting *Vanguard Recovery Assistance v. United States*, 101 Fed. Cl. 765, 781 (2011)).  Regarding past performance evaluations, moreover, agencies are not restricted to references submitted by offerors and must draw upon internal information, even if not cited by the offeror.  *See Vanguard Recovery*, 101 Fed. Cl. at 780–81.  Nevertheless, "[c]ourts typically limit the universe of information that it considers 'too close at hand' to documents in the possession of the contracting agency or information that is personally known to the contract evaluator."  *Insight Public Sector*, 157 Fed. Cl. at 410.  The agency was not required to find alternative ways to obtain the contact information KACE failed to timely submit.  For these reasons, the "too close at hand" doctrine does not apply.

In any event, the Secret Service rejected KACE's original FPR for an additional reason: the proposal was ambiguous regarding which cited corporate experiences related to KACE's own experience as a prime contractor versus those related to the company's predecessors and affiliates.  The procurement history in this case makes clear that the impetus for Amendments 0005 and 0006 was the revelation that KACE was less than clear in representing its corporate history and

---

[17] During oral argument, the Court raised another source of information: KACE's second FPR. *See* Tr. at 105, 206.  Defendant and Cellebrite persuasively countered that the use of the late proposal for this purpose would allow KACE to circumvent the "late is late" rule without legal authority.  *Id.* at 93, 119–20.  Accordingly, the Secret Service properly ignored KACE's second FPR. *See Labatt Food Serv., Inc.*, 577 F.3d at 1381 (untimely proposal is null and void); *Strategic Business Sols.*, 129 Fed. Cl. at 629–30 (agency not required to afford offeror opportunity to cure noncompliance because it would permit offeror to secure tactical advantage and prejudice other offerors).

experience in response to the original solicitation.  KACE's second FPR sought to answer those precise questions.  As such, allowing clarifications to enable KACE to present this information would effectively circumvent the "late is late" rule.  Accordingly, the agency's decision not to engage KACE in clarifications on these issues was not arbitrary, capricious, an abuse of discretion, or contrary to law.

## VI.   Unstated Evaluation Criterion

Finally, KACE argues the Secret Service applied an unstated evaluation criterion by disqualifying its original FPR for not conforming with the solicitation's amended instructions.  More specifically, KACE asserts: "Amendment 0006 does not support a broad power to disqualify minor nonconformities with the instructions . . . .  Before Amendment 0006 the solicitation's evaluation criteria did not state that strict compliance with the instructions was necessary to be considered eligible for award."  ECF 30 at 38.  During oral argument, KACE used the turn of phrase "go/no go" decision-making in describing the Secret Service's cursory review of the offeror's original FPR against Amendment 0006.  *See* Tr. at 24, 31–33, 105, 111.

"Agencies must evaluate proposals and make awards based on the criteria stated in the solicitation."  *See Poplar Point*, 147 Fed. Cl. at 219.  Accordingly, "an agency decision is arbitrary and capricious if the decision is a product of the agency's application of unstated evaluation criteria."  *Thalle Constr. Co., Inc. v. United States*, 159 Fed. Cl. 698, 707 (2022).  As stated in *Thalle Constr.*:

> To succeed on an unstated evaluation criteria claim, a protester must show that: (i) the procuring agency used a significantly different basis in evaluating the proposals than was disclosed; and (ii) the protestor was prejudiced as a result–or, in other words, that it had a substantial chance to receive the contract award but for that error.

*Id.* at 708 (citations omitted).

The solicitation clearly advised offerors that their failure to comply with the solicitation's instructions could result in their offer not being considered for award.  Indeed, the solicitation explained that proposals were to "clearly and convincingly" demonstrate an offeror's understanding of the requirements and "[f]ailure of an offeror to address any items listed in FAR 52.212-1 and [the solicitation's] addendum may make the offer unacceptable and may result in it not being considered for award."  AR 3918.  This provision encompasses both the missing CO/COR contact information and information regarding KACE's corporate experience is distinguishable from that of its predecessors and affiliates.  A comparison of KACE's original and second FPRs highlights the missing information.  *Compare* AR 626–28 *with* AR 4121.

Notwithstanding KACE's characterization of the FPR omissions as minor nonconformities with the solicitation's instructions (i.e., Section L of the

solicitation), the information sought through Amendment 0006 is material under Factor 2 (Corporate Experience).  In response to Cellebrite's protest, and as part of the agency's corrective action, the agency specifically revised the solicitation to flesh out the details of KACE's actual corporate experience, which was called into question by its recent formation.  Contrary to KACE's position, the solicitation's requirement to provide CO/COR contact information is not a mere formalistic instruction; it serves as a substantive tool for the agency to solicit independent information and opinions regarding an offeror's past performance.  "There is no rule that a Section L instruction cannot serve a substantive purpose."  *Oak Grove Techs., LLC v. United States*, 155 Fed. Cl. 84, 104 (2021) (Request for Proposals (RFP) teaming agreement requirement under Section L was substantive and material).

KACE endeavored to comply with Amendment 0006's requirements in its second FPR, evidencing KACE's understanding that the requirements were material.  In its second FPR, KACE provided the requested CO/COR contact information and explained its corporate experience vis-à-vis MVM.  For example, KACE explained the company was formed in January 2021, after splitting from MVM through a corporate restructuring.  KACE then highlighted MVM's 40-year history and the overlap in personnel and infrastructure between the two companies.  Of note, KACE explained it changed one of its cited experiences to better reflect its own corporate experience, but this information was not included in KACE's original FPR.  Given the procurement's history, KACE cannot credibly claim the amended instructions and FAR 52.212-1 addendum were immaterial to the solicitation and the agency's evaluation of Factor 2 (Corporate Experience).  Accordingly, the Court finds the Secret Service did not apply unstated evaluation criteria.

## VII.  Injunctive Relief

To grant injunctive relief, the Court must consider whether: (1) plaintiff has succeeded on the merits of the case; (2) plaintiff will suffer irreparable harm if the Court withholds injunctive relief; (3) the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) the public interest is served by granting injunctive relief.  *See GS4 Secure Integration LLC v. United States*, 161 Fed. Cl. 387, 418 (2022) (citing *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009)).  As the party seeking injunctive relief, KACE bears the burden of proof.  *Dell Fed. Sys.*, 906 F.3d at 999 n.13 (finding appellees could not satisfy their burden to justify a permanent injunction).

### A.    Likelihood of Success

Success on the merits carries "great weight" in determining whether injunctive relief is appropriate.  *See Dell Fed. Sys.*, 906 F.3d at 999 n.13.  It necessarily follows that a protestor's inability to make this showing "precludes the possibility of an injunction."  *See id.*; *accord Aircraft Charter Sols., Inc. v. United States*, 109 Fed. Cl. 398, 416 (2013) ("without success on the merits, the injunctive relief inquiry is over."); *Linc Gov't Servs., LLC v. United States*, 96 Fed. Cl. 672, 700

(2010) ("success on the merits is a condition precedent to granting a permanent injunction").  In finding in favor of the Secret Service and Cellebrite on the merits of this case, the Court necessarily concludes KACE has not succeeded on the merits, thereby failing to meet its burden under this factor.

### B.    Irreparable Harm

KACE argues it will suffer irreparable harm to its business absent injunctive relief.  In support, KACE cites the time, labor, and resources expended preparing the original and second FPRs as well as potential layoffs of personnel if the company is not awarded this five-year contract.  At best, the claimed harms are attenuated because KACE cannot show the company would have been selected for award if the Secret Service either accepted the second FPR or opted not to eliminate its original FPR from consideration.  KACE is singularly responsible for its current predicament: KACE failed to transparently represent the company's corporate history in its original FPR and then failed to timely submit its second FPR.  Both actions resulted in KACE's now-forfeited opportunity to compete.  Therefore, KACE cannot show the requisite irreparable harm.

### C.    Balance of Hardships

The balance of hardships does not tip in KACE's favor.  KACE argues the harm of losing the opportunity to compete for the award significantly outweighs any harm to the Secret Service in allowing KACE to remain in the competitive range. Although the Secret Service agreed to review KACE's original FPR in response to the revised solicitation, the agency acted within its discretion in determining KACE's original FPR did not comply with Amendment 0006.  KACE has not demonstrated the agency's actions were arbitrary, capricious, contrary to law, or that the agency otherwise abused its discretion in excluding KACE from further consideration.  In fact, the balance of hardships leans heavily in favor of the government: allowing KACE to continue in this procurement would invite another protest by Cellebrite.

### D.    Public Interest

This Court has held "the public has a strong interest in a fair and competitive procurement process, which is best served by ensuring that the government complies with regulations governing procurement programs." *KVW, Inc. v. United States*, 111 Fed. Cl. 119, 128 (2013) (citations omitted).  The Court finds the Secret Service acted reasonably and complied with applicable regulations in considering KACE's original and second proposals.  The public interest would not be served by an injunction disturbing the agency's determinations.  Accordingly, the Court denies plaintiff's request for permanent injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record (ECF 30) is **DENIED** and Defendant's and Defendant-Intervenor's Cross-Motions for Judgment on the Administrative Record (ECF Nos. 34–35) are **GRANTED**.  The Clerk of Court is directed to **ENTER Judgment** accordingly.  No costs.

It is so **ORDERED**.

Armando O. Bonilla
Judge